## Lewis *v*. The State.

1. In a trial for seduction it is not competent evidence on behalf of the State that the parents of the female alleged to have been seduced and the family generally were persons of good character and standing in the community. Even the character of the female herself is not competent evidence except in rebuttal to evidence tending to impeach either her chastity as a woman or her veracity as a witness.
2. It is improper for the solicitor-general, whilst a trial for seduction is in progress, to make out a bill of indictment for fornication against one of the defendant's witnesses who had just testified, and announce in the hearing of the jury that he intended to prosecute the witness for that offence.        *Judgment reversed.*

June 8, 1892.

Criminal law. Seduction. Evidence. Practice. Before Judge McWhorter. Hancock superior court. April term, 1892.

Jackson Lewis was convicted of seducing Rebecca Fraley. His motion for a new trial was overruled, and he excepted. The special grounds of the motion are as follows:

1. Over the defendant's objection that it was irrelevant, the court admitted the following testimony: R. S. Bass: "I know Edmond Fraley; Rebecca has been before us; Edmond lives about four miles from me. I think I have known him pretty much ever since

1865, soon after the war. I know more about Edmond than I do about his family, but the whole family stands well; I don't know just such a family of colored people in Hancock county or any other county. I know nothing against this woman; never heard anything against her or any of the family, until this trouble. I wish all the colored people in the county were just like this family. As far as to his raising his children, I don't know anything about that." Alf. Harper: "I know Edmond Fraley; I live about a half a mile from him; have known him all my life; his family stands higher in our community than any family I ever saw—as a colored man; he is an exception to the rule. I have talked to him frequently about the thing, and he keeps everything right in his house. I think he is a model colored man. I know this girl Rebecca. I do not know anything against her; never heard anything at all until this court." A. J. Smith: "I know Edmond Fraley; I know his daughter, Rebecca Fraley; they live about a mile from me; I have known them since 1867 or 1868. The reputation of the family in the community where they live is very good; I think Edmond and his wife have both tried to raise their children right; they stand very well in our neighborhood. This girl Rebecca has a very good reputation in the neighborhood, so far as I know; I have never heard anything against her in the nature of immoral conduct, until a week or so ago." R. L. Lawson: "I know the family of Edmond Fraley; have known them for seven or eight years, more or less; I am a preacher in that neighborhood; Edmond is a member of my church, and his family is in my church. All I know about them, they are a good family of people, and stand very fair in the community and the church ever since I have been there as pastor; I have been there something over two years as pastor; I have known them 7 or 8 years; I know the name of William War-

ren; I know nothing about his character or reputation. Edmond Fraley's family generally ride to church in a buggy. I know about a protracted meeting that was held in August and September, 1891 ; I know his daughter Rebecca attended the services; I can't say whether she walked or rode all through the meeting ; I have seen her in a buggy several times at night; I don't remember that I ever saw her in the company of William Warren; I don't know the man, only by name."

2. Newly discovered evidence, to wit:

" Hancock county, Oct. 27, 1891. Mr. William Warren: Dear Sir,—I write you a few lines to let you hear from me. I am well, and hope when you get letter it will you the same. I think hard of you for not coming over here last Sunday. I stayed at home all day. I looked for you. Please come over here Sunday. I want to see anyhow. The way that you treat me, it makes me think you don't mean what you say. What you was talking to me about, if you come over next Sunday it will be all right. Sweetheart, don't pay attention to that. Come, and I will tell you all about it. I will come to a close by saying howdy. Your truly, your dear darling at home, Miss Rebecca Fraley."

William Warren made affidavit that he received this letter from the hands of Allen Watts, and on the same day saw Rebecca Fraley and talked to her about it, and she admitted writing it; that during the past year he had considerable correspondence with her, and recognizes this to be her handwriting ; that if sufficient time were allowed him, he could produce other letters from her; and that he never communicated these facts to the defendant or his counsel until May 1, 1892. (The trial occurred on April 14.) The defendant made affidavit that he did not know of the existence of the letter or of any of the facts stated in the affidavit of Warren until May 2, 1892, and that he had not seen Warren since his trial. The counsel made affidavit " that as sole attorneys employed by Jackson Lewis they never knew

of facts stated in affidavit of Wm. Warren until after the trial and conviction of Jackson Lewis." William Warren was a witness for the defendant at the trial. He testified that he had sexual intercourse with Rebecca Fraley several times during the protracted meeting in August and September, 1891. She testified directly to the contrary.

3. Another ground in the motion for a new trial is, that the solicitor-general, while the case was being tried, prepared a bill charging Wm. Warren with fornication, and transmitted it to the grand jury by a bailiff, and stated in the hearing of the jury that he proposed to prosecute the witness. No objection to this was made, and there was no request to instruct the jury about it by defendant's counsel.

J. T. JORDAN, T. M. HUNT and T. L. REESE, for plaintiff in error.

W. M. HOWARD, solicitor-general, by brief, *contra*.