UNITED STATES of America, Plaintiff,

v.

Frank B. WILSON, Defendant.

Crim. No. 316–59.

United States District Court
District of Columbia.

Dec. 4, 1959.

---

Oliver Gasch, U. S. Atty., and Joel D. Blackwell, Asst. U. S. Atty., Washington, D. C., for plaintiff.

Arthur W. Jackson and James A. Cobb, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

The defendant Frank B. Wilson was convicted of murder in the first degree and moves for a new trial on the ground that the verdict was contrary to the weight of the evidence.

The indictment charged that on or about February 20, 1959, Frank B. Wilson purposely and with deliberate and premeditated malice murdered Florence E. Smith by means of shooting her with a pistol. It might be said that the considerable interval that elapsed between the date of the indictment and the date of the trial was caused by the fact that two mental examinations were had on the motion of the defendant, which consumed several months. The specific charge against the defendant was that, on the morning of February 20, 1959, at about seven o'clock, he entered the apartment of the deceased, with whom he had carried on a clandestine love affair, and fatally shot her. In its instructions, the Court indicated to the jury that if the defendant was convicted, the jury might bring in a verdict of guilty of murder in the first degree, guilty of murder in the second degree, or guilty of manslaughter. As stated, the jury returned a verdict of guilty of murder in the first degree.

At the close of the Government's case, as well as at the close of the entire case, the Court denied a motion made by the defendant to take the case away from the jury insofar as the charge of murder in the first degree was concerned. It was the view of the Court, and it is still its view, that there was sufficient evidence to justify the submission of all of the issues to the jury. There is, however, a very definite distinction between a motion for a judgment of acquittal and a motion to set aside the verdict on the ground that it is contrary to the weight of the evidence. A motion for a judgment of acquittal raises the question of law whether there is any substantial evidence whatsoever justifying a conviction. A motion to set aside the verdict on the ground that it is contrary to the weight of the evidence introduces an entirely different issue, namely, whether on weighing all of the evidence on both sides, it heavily preponderates against the verdict.

The effect of the two motions is also entirely different. If a motion for a judgment of acquittal is granted, the result is a final disposition of the case and an acquittal of the defendant. If a motion for a new trial is granted, the result is merely that the case will be tried before another jury and the parties will have a second opportunity to present the issues.

To set aside a verdict on the ground that it is contrary to the weight of the evidence is a very serious matter. Verdicts of juries should not be treated lightly. A great deal of respect must be accorded and much weight attached to the verdict of a jury. I personally have a mounting sense of admiration for the type of justice that is generally meted out by the average jury. Nevertheless, all human beings are fallible. If a verdict is contrary to the weight of the evidence, it is the duty of the judge to set it aside. It is a duty that cannot be avoided, although the responsibility involved is great.

It must be borne in mind that there is no way of reviewing a verdict of a jury on the facts except by a motion for a new trial made before the trial judge. The Court of Appeals may not review the facts, that is, it may not reverse a conviction because it is contrary to the weight of the evidence. Its authority is

limited to reviewing questions of law, in this instance whether there was sufficient evidence to submit the issue to the jury.

As just stated, the effect of granting a motion for a new trial is not to make a final disposition of the case, but merely to secure the decision of another jury. If a second jury reaches the same conclusion as the first it does not necessarily follow that the trial judge would set aside the second verdict. Only a short time ago, in the case of Frank v. Atlantic Greyhound Corp., D.C., 177 F.Supp. 922, I had set aside a verdict in a civil case on the ground that the damages awarded to the plaintiff were excessive. At the second trial approximately the same result was reached. I declined to set aside the second verdict as it seemed to me that two juries having practically agreed, substantial justice had been done.

The principles governing motions for a new trial are well established. I had occasion to review the authorities on the subject in United States v. Robinson, D.C., 71 F.Supp. 9, 10–11, and in the course of the discussion made the following remarks, after referring to motions for a directed verdict and motions for judgment notwithstanding the verdict:

> "On the other hand, on a motion for a new trial on the ground the verdict is against the weight of evidence, the power of the Court is much broader. On such an application, the Court may weigh the evidence and consider the credibility of witnesses. If the Court reaches the conclusion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted, the verdict may be set aside and a new trial granted. Naturally this authority should be exercised sparingly and with caution. It should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.
>
> "There is no incongruity or inconsistency in requiring the Court to submit the issues to the jury if there is substantial evidence to support a verdict of guilty, and at the same time in empowering it to set the verdict aside if it is deemed contrary to the weight of the evidence. In directing a judgment of acquittal, the Court makes a final disposition of the case. On the other hand, in setting the verdict aside the Court merely grants a new trial and submits the issues for determination by another jury. It is appropriate that in the latter instance, the Court should have wide discretion in the interest of justice."

A graphic summary of these principles was made by Judge Parker of the Fourth Circuit in the leading case of Aetna Casualty & Surety Co. v. Yeatts, 122 F.2d 350, 354, where he said:

> "To the federal trial judge, the law gives ample power to see that justice is done in causes pending before him; and the responsibility attendant upon such power is his in full measure. While according due respect to the findings of the jury, he should not hesitate to set aside their verdict and grant a new trial in any case where the ends of justice so require."

 The Court is convinced that in this case a verdict of guilty of murder in the second degree would have been in accord with the weight of evidence and would have been amply justified. The distinction between murder in the first degree and murder in the second degree is that the former, in addition to intent to kill, requires premeditation and deliberation, while murder in the second degree does not require any premeditation or deliberation and not even an intent to kill, if the killing is accompanied with malice. Under the law as it has been interpreted in the District of Columbia, in order that there may be sufficient premeditation and deliberation, some appreciable interval, no matter how brief, must elapse after the intent to kill is formed and before the killing is accomplished, and during that interval there must have

been some reflection which would amount to premeditation and deliberation.

This principle of law was formulated by the Court of Appeals in Bostic v. United States, 68 App.D.C. 167, 170, 94 F.2d 636, 639 where the Court stated:

> "Some appreciable time must elapse in order that reflection and consideration amounting to deliberation may occur."

In this respect the law of the District of Columbia differs from the rule applicable to murder in the first degree in some of the States, where it is held that premeditation and deliberation may be simultaneous with the formation of the intent to kill.

A later statement of the same principle is found in Bullock v. United States, 74 App.D.C. 220, 221, 122 F.2d 213, 214, where it is stated that:

> "The deliberate killer is guilty of first degree murder; the impulsive killer is not."

The verdict of guilty of murder in the first degree necessarily implies a finding of premeditation and deliberation in addition to the finding of intent to kill. The Court is of the opinion that the finding of intent to kill is sustained by the weight of the evidence, because such an intent may be implied from the very fact that a person fires a gun in the direction of another. The difficult question in this case is whether the finding that there was deliberation and premeditation, within the legal definition to which reference has just been made, is sustained by the weight of the evidence.

In order to reach a conclusion on this crucial question it is necessary to review the evidence briefly. As has been stated, the defendant and the deceased had been carrying on a love affair for a number of years. In fact, their relation was so close that the defendant had a key to her apartment, although they were not actually living in the same premises. The defendant was a taxicab driver and apparently was in the habit of calling to see the deceased at irregular hours, and at times when he happened to be cruising

in the neighborhood of her home. Apparently during the few weeks preceding the homicide, the love affair between the deceased and the defendant did not have smooth sailing. On the occasion of the homicide at seven o'clock in the morning of February 20, 1959, it appears from the evidence that the defendant entered the apartment of the deceased by using his own key and surprised her. She was at that time getting ready to go to work and already had put on her coat. Her son was downstairs on the adjoining parking lot warming up his car and waiting for his mother. The defendant had a pistol in his overcoat pocket when he entered the apartment. There was an exchange of a few sentences between them and then he pulled out his pistol and shot the deceased several times.

The fact that the defendant was armed with a deadly weapon when he entered the apartment of the deceased is one item of evidence in support of an inference that there was premeditation and deliberation. It is because of this feature that the Court declined to take away from the jury the charge of murder in the first degree. Nevertheless, the weight to be accorded to the fact that the defendant was armed depends on circumstances. This fact would have great weight if the defendant had owned no weapon previously but acquired it for the occasion. It would have somewhat less weight if the defendant had been in possession of the weapon but was not in the habit of carrying it around. The significance is much weaker if the defendant was always in the habit of carrying the pistol. The evidence tends to show this was the case here. He claimed that as a taxicab driver he always carried the weapon in his cab as a protection against robberies, and on this occasion, since he was wearing an overcoat, he kept the pistol in his overcoat pocket. Obviously in carrying the pistol the defendant was violating the law, but this circumstance does not bear upon the issues of this case.

The theory of the Government was that the defendant arrived in the

vicinity of the premises and lay in wait until the son left the apartment and then the defendant rushed in to kill the deceased. The Court is of the opinion that substantial evidence to support this hypothesis is lacking, and that there is no basis for such an inference. It is based entirely on speculation, suspicion and conjecture. It is, therefore, necessary to discard in its entirety the theory that the defendant lay in wait.

There appears to be no evidence supporting a finding of premeditation and deliberation other than the fact that the defendant entered the premises carrying a pistol in his overcoat pocket. This is not a case in which such a deduction is supported by evidence of prior threats or by some indication of a hostile attitude toward the deceased. On the contrary two days before the homicide the defendant wrote to the deceased what might be called popularly a love letter, in which he said in passing that he had no desire to hurt the deceased in any way.

What then is the evidence contradicting the inference of premeditation and deliberation? At the trial the defendant took the witness stand and testified that he entered the apartment of the deceased, unlocking the door with his key, and then he said on the stand: "And I actually cannot truthfully say that I remember shooting Florence. There wasn't any cause, and yet I can almost vividly recall my arm jumping like you would shoot a pistol, but I never heard no shots."

The Government introduced in evidence as part of its case a written statement made by the defendant to the police. That statement was quite different from his testimony on the stand and much more damaging to the defendant. The pertinent part of the statement reads as follows:

"This morning I got up early and went over there to talk to her. I had a key to the apartment and used to go in. She jumped up. 'I know you come over to hurt me. You got a gun or something.' She started screaming and then she started hollering. 'Go on and do it', or some-

thing. I saw red and I pulled the gun out of my right overcoat pocket and shot her, four times, I think. Then I tried to shoot myself, but the gun jammed."

Afterward the defendant left the premises, drove away in his cab, telephoned the police and surrendered. The Government naturally relies upon the defendant's confession to the police rather than his testimony on the witness stand, as the Government has a right to do.

▇▇▇▇▇ The confession of the defendant to the police in effect admits the homicide but denies premeditation and deliberation as well as an intent to kill. It is an elementary principle that the jury is not bound to accept the entire confession. It may accept a part and reject the balance. It may believe the damaging admissions and discredit the exculpatory assertions. Assuming, however, that the jury rejects the exculpatory portions it may not draw an inference contrary to them unless there is affirmative evidence contradicting such assertions, be that evidence direct or circumstantial, from which the opposite deduction can be drawn. The jury had a right to discard the disclaimer of intention to kill and of premeditation and deliberation, but it might not draw an inference to the contrary, unless there is evidence to support it. In this case there is none except the fact that the defendant was armed. There were no eye witnesses to the murder. There is no circumstantial evidence other than the fact that the defendant was armed to support the theory that the murder was premeditated.

The Court has given a great deal of thought to this case since the time that the jury returned its verdict, because the responsibility resting on the Court is a heavy one. Manifestly, it cannot be avoided. After a great deal of reflection the Court has reached the conclusion that the verdict of guilty of murder in the first degree is contrary to the weight of the evidence as concerns the necessarily implied finding that there was premeditation and deliberation on the part of the defendant before he committed the

homicide. As stated before, a verdict of murder in the second degree would have been fully warranted.

Under the circumstances, the Court has no alternative but to grant the motion for a new trial and this will be the order of the Court.

Motion for a new trial granted.