**UNITED STATES of America ex rel. Matthew WALKER, Petitioner,**

**v.**

**Hon. Harold W. FOLLETTE, Warden of Green Haven Prison, Respondent.**

**No. 69 Civ. 5287.**

United States District Court, S. D. New York.

Feb. 27, 1970.

Matthew Walker, pro se.

Louis J. Lefkowitz, Atty. Gen. of State of New York, by Hillel Hoffman, Asst. Atty. Gen., New York City, for respondent.

MANSFIELD, District Judge.

Petitioner is presently serving a 15 to 35 year term in Green Haven State Prison, pursuant to his conviction in 1963 in the Suffolk County Court of the crimes of rape, attempted robbery, grand larceny, and possession and use of a dangerous weapon. Claiming that he was deprived of a fair trial by the prosecutor's introduction against him of two prior convictions obtained when he was without benefit of counsel, he now petitions for a writ of habeas corpus directing his release and the holding of a new trial at which the tainted convictions will not be introduced in evidence.

Petitioner was indicted in late 1962 for the crimes of first degree rape, attempted robbery in the first degree, assault second degree, grand larceny first degree, carrying and use of a dangerous weapon, and unauthorized use of a motor vehicle. He and a co-defendant, Preston Smith, were tried by a jury and convicted in the Suffolk County Court on February 19, 1963, on the counts charging rape, robbery, larceny, and carrying and use of a dangerous weapon. Disregarding the two prior convictions, which are the occasion for the present petition, the evidence of his guilt, which included testimony of the rape victim and petitioner's own detailed signed confession, was overwhelming. On March 29, 1963, petitioner was sentenced to terms of 10 to 20 years on the rape count and 5 to 15 years on the attempted robbery count, to be served consecutively, for a total sentence of 15 to 35 years. On May 20, 1964, petitioner was re-sentenced to the same term.

While petitioner's direct appeal was pending before the Appellate Division, the Supreme Court decided Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1965). The Appellate Division, by order dated December 21, 1964, remanded the case to the Suffolk County Court for a hearing on the voluntariness of a confession which had been introduced against petitioner at trial. People v. Walker, 22 A.D.2d 927, 255 N.Y.S.2d 507 (2d Dep't 1964). After the hearing the issue of voluntariness was decided against petitioner, and his conviction was affirmed, 24 A.D.2d 1079, 265 N.Y.S. 2d 609 (1965). Leave to appeal was denied by the Court of Appeals on February 4, 1966, and certiorari was denied by the Supreme Court of the United States on October 10, 1966, 385 U.S. 864, 87 S.Ct. 121, 17 L.Ed.2d 91.

■ Petitioner has already presented the claims he makes before us to the state courts in the form of a petition for a writ of error coram nobis, which was denied on March 20, 1968. The denial was affirmed without opinion, People v. Walker, 32 A.D.2d 813, 302 N.Y.S.2d 510 (2d Dep't 1969), and leave to appeal was denied by the Court of Appeals on November 5, 1969. Petitioner has therefore fully complied with the exhaustion requirements of 28 U.S.C. § 2254.

*Use of the Tainted Convictions*

■ The convictions of which petitioner complains were introduced for purposes of contradicting and impeaching petitioner, who took the stand in his own defense. On direct examination, among other preliminary questions about his background, petitioner was asked by his counsel the question "Have you ever been convicted of a crime?" to which he replied "No, sir," (Tr. 419). The questioning then moved on to the circumstances of his first meeting with the complaining witness. On cross-examination, later in the same day, the following interrogation and colloquy occurred (Tr. 572–78):

Q. Have you ever been in Levittown, Pennsylvania?

A. Levittown?

Q. Yes, Levittown, Pennsylvania?

A. Yes, sir.

Q. And were you there in 1956?

A. Yes, sir.

Q. And how about in the Town of Bristol?

A. That's the same place.

Q. Yes, Levittown is in Bristol, right?

A. It's the same—yes.

Q. You were there then, right?

A. Yes, sir.

Q. Did you get in trouble there?

Mr. LAFRENIERE [defendant's attorney]: I object to the form of the question.

THE COURT: I'll sustain it.

MR. CONNORS [the prosecutor]: This is the Defendant.

Q. You say you were never convicted of anything; is that your story?

A. You said the felony.

MR. LAFRENIERE: I'm going to object. Just a minute, please. I'll object to the form of the question as argumentative.

THE COURT: (To the Reporter) Would you read the question back, please?

(Whereupon, the question was read back by the Reporter)

THE COURT: I'll allow it.

MR. LAFRENIERE: Exception.

A. I was never convicted of anything.

Q. Were you ever convicted of anything? Yes or no.

A. The word—

MR. LAFRENIERE: I object. That was not the question.

THE COURT: Mr. LaFreniere—

MR. LAFRENIERE: I want to have my objection on the record, if your Honor please. I object to it because that was not the question he was asked. He was asked "Were you ever convicted of a crime?" Not anything.

MR. CONNORS: Now please,, may I ask my own questions, counsel?

MR. LAFRENIERE: I'm objecting to the form of it.

THE COURT: All right, he objected to the form, I have allowed the question, you have your exception.

MR. LAFRENIERE: Thank you.

THE COURT: Mr. Connors.

Q. Will you please answer the question?

A. Yes.

Q. Were you ever convicted of anything at all in Pennsylvania in 1956? Yes or no.

A. Yes, but it wasn't nothing serious.

Q. What?

A. It wasn't nothing serious.

Q. It wasn't anything serious?

A. Now could I explain to the Jury what happened?

Q. Just answer my questions, please, yes or no when I ask you for that. Will you do that?

THE WITNESS: Your Honor—

THE COURT: Just answer the question.

Q. Now, do you want to tell us what you were convicted of, what the crime was?

A. Yes, sir.

Q. What was it?

A. It was—

Q. What was it?

A. We was having a target practice, me and another guy, and he let me shoot his pistol, and I shot myself.

Q. You shot yourself?

A. Yes, right here in the leg (indicating). Do you want to see it?

Q. The assault was on yourself, right?

A. Assault? That's not assault record. I don't have one. You got me mixed up with somebody else.

Q. So what were you convicted of?

A. It was $50 for—

Q. Of what, shooting yourself?

A. I don't know what it was. I'm trying to think what they call it. Some kind—something about a firearm. No assault charge.

Q. Now about Trenton, New Jersey, have you ever been there.

A. Yes.

Q. 1958?

A. Yes.

Q. Never been convicted at Trenton, New Jersey?

A. Yes, sir. We had a beer party. For disorderly conduct.

Q. What were you convicted of?

A. I just told you.

Q. Disorderly conduct?

A. Yes, sir. We was having a beer party—

Q. Never mind.

A. I think it's right for the jurymen to know what it is.

THE COURT: Mr. Walker, you'll answer the questions that Mr. Connors asks you, and then you have a chance to answer the questions that your counsel asks you.

THE WITNESS: Yes.

Q. So when your attorney asked you if you had been convicted of a crime and you told him no, you were wrong; is that right?

A. I wouldn't call it a crime.

MR. LAFRENIERE: Just a minute. I seriously doubt whether or not disorderly conduct is a crime. It's an offense. It depends on what section he was convicted, and Mr. Connors apparently doesn't know.

THE COURT: I think we are in a question of semantics, which may well be beyond the defendant's understanding. I will sustain your objection.

MR. LAFRENIERE: Thank you, sir.

Q. Did you pay a fine when you were convicted of disorderly conduct in New Jersey?

A. Yes, a lot of us did.

Q. How much did you pay?

A. $250.

MR. CONNORS: No further questions.

On redirect no mention whatsoever was made of either prior conviction.

Mr. LaFreniere's questions ranged instead from Walker's honorable discharge from the Marine Corps (Tr. 578–79) to the physical abuse he claimed he had received at the hands of the officers who took his confession (Tr. 581–83).

No mention was made of the prior convictions in Mr. LaFreniere's summation. Mr. Connors, however, did refer to them twice in his own summation.

Now, Mr. LaFreniere said in his summation that Walker, he was—what word did he use? Mild mannered or something like that. A meek individual, not very bright. I think you will agree with me from his appearance on the stand that he had in fact quite a bit of mental agility. I understand there was testimony to the effect that he was still going to school; that he told you of his previous assault in New Jersey; that something happened in Pennsylvania. This isn't exactly a mild mannered man to my mind. But Mr. LaFreniere would have you believe he's a mild mannered man, and then he is stupid. I think each and every one of you will agree with me the man is far from stupid. (Tr. 624–25)

Now, of course in the course of his testimony he sat up there with a nice big smile on his face and he said to Mr. LaFreniere when Mr. LaFreniere asked him, "Have you ever been convicted of a crime?" "No." A big smile. That was it. "No." And when I asked him had he ever been in these various places, it came out his answer was, "I thought Mr. LaFreniere was talking about felonies." So had I let it go, you would have thought here is this Walker, never been in any trouble before, certainly not a violent man. (Tr. 645–46)

Petitioner asserts that he was not represented by counsel at the time he pleaded guilty to both the disorderly conduct and unlicensed possession of firearm charges, that he had not been properly informed of his right to counsel in either case, that both convictions were therefore rendered void by Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and that the recent Supreme Court decision in Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1969), requires that he be granted a new trial because of the prosecutor's use of the tainted convictions upon the trial of this case.

Even if we accept petitioner's contention with respect to the invalidity of the Pennsylvania and New Jersey convictions, we think that in the circumstances of this case petitioner's conviction must stand.

Burgett v. Texas, like this case, involved the admission into evidence, at a trial for assault with intent to murder, of prior convictions obtained in the absence of representation by counsel. Articles 62 and 63 of the Vernon's Ann. Texas Penal Code provide that if it be shown on trial of a felony that the defendant has been previously convicted of the same or a similar offense, or twice of the same offense, increased penalties of up to life imprisonment shall be imposed upon the subsequent conviction. Four of the five counts of the indictment read to the jury at the start of the *Burgett* trial accordingly related to prior felony convictions, one for burglary and three for forgery. In the course of the trial the prosecution attempted to introduce records of the convictions referred to in the indictment. Defense counsel objected on *Gideon* grounds, and succeeded in excluding all but one of the records offered. At the end of the trial the court withdrew consideration of the prior convictions from the jury altogether, since the one conviction proved did not meet the requirements of either Article 62 or 63.

The Supreme Court reversed Burgett's conviction, even though he had not received the enhanced punishment provided for by the recidivist statutes. It was enough that in determining Burgett's guilt the jury had had before it, cautionary instruction or not, evidence of presumptively void prior convictions.

To permit a conviction obtained in violation of Gideon v. Wainwright to be

used against a person either to support guilt or to enhance punishment for another offense * * * is to erode · the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right.

The admission of a prior criminal conviction which is constitutionally infirm under the standards of Gideon v. Wainwright is inherently prejudicial and we are unable to say that the instructions to disregard it made the constitutional error "harmless beyond a reasonable doubt" within the meaning of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. (389 U.S. at 115, 88 S.Ct. at 262)

■ However broad the language employed by the Court in the *Burgett* decision, however, we do not accept petitioner's contention that no matter what the circumstances a defendant is entitled to a new trial whenever the jury has been made aware of a prior conviction invalid under Gideon v. Wainwright. In *Burgett* the convictions in question were for serious offenses; they were presented to the jury as a part of the indictment and the state's own direct case; records of the convictions were offered into evidence in the presence of the jury; and defense counsel, in addition to objecting to the introduction of the records of conviction during the trial, moved before trial to quash the four counts of the indictment referring to the prior convictions. In the instant case the prior convictions were for relatively minor offenses,[1] no records of them were offered into evidence to impress the jury with their weight, and defense counsel failed to object to anything but the form of the prosecutor's questions about them.

■ Furthermore, it was petitioner himself who brought up the subject of the convictions by his denial on direct examination that he had ever been convicted of a crime. While "opening the door" on direct may not amount to a blanket waiver, where as a matter of trial strategy a defendant himself decides to open up a sensitive area—whether because he hopes to draw the sting out of the prosecution's case or because he mistakenly believes he has nothing to fear—he cannot expect the same measure of protection from cross-examination as when the prosecution initiates the inquiry.

■ Most important, however, in distinguishing this case from *Burgett*, is that in the instant case the prior convictions were introduced for purposes of *contradiction*, not to subject defendant to increased punishment. It was important to the *Burgett* court that Burgett had in effect been made to suffer anew from deprivation of his Sixth Amendment right to counsel. 389 U.S. at 115, 88 S.Ct. 258. The *fact of the prior convictions*, standing alone, was intended to weigh independently against Burgett. This rendered the jury's exposure to them "inherently prejudicial" and called for reversal.

In the instant case it was not the fact of prior conviction that the jury was being asked to weigh against petitioner. It was rather the discrepancy between

---

1. Petitioner in his moving papers places great emphasis on the prosecutor's two references to the Pennsylvania incident as an "assault" conviction (Tr. 576, 625), claiming that in the context of an indictment charging him with assault specifically and with the similar crime of rape such references were so prejudicial as to require reversal. As the testimony quoted above indicates, however, petitioner made it very clear at the time of the first reference (Tr. 576) that the conviction had not been for as-

sault, and his explanation could have left little doubt on the point in the minds of the jury. The reference in summation to "his previous assault in New Jersey" was a single use of the term, made almost in passing, and in the context of the explanation given by petitioner on cross cannot be said to rise anywhere near the level of reversible error. It should be noted that petitioner was acquitted on the count charging assault.

his denial on direct examination of *any* criminal record and the actual existence of such a record. His contradiction was relevant to his credibility and the weight to be extended to his testimony. Whether the jury concluded that he lied or only that his memory was faulty, the effect would be to discredit other factual assertions made upon direct examination. Petitioner was thus not made to "suffer anew" from his earlier deprivation of the right to counsel as was the case in *Burgett*. The conclusion which the jury was asked to draw—that petitioner's testimony was inaccurate and untruthful—was based upon his contradiction rather than upon the theory that since he had been convicted of other crimes he probably was guilty of the crime presently charged against him. The presence or absence of counsel at the time of the prior convictions was irrelevant to the use being made of them.

In these circumstances we find that the admission of prior criminal convictions presumptively invalid under *Gideon* do not require reversal of the conviction, and accordingly deny the petition.

It is so ordered.