**Cecil R. CURRY, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 7218.

District of Columbia Court of Appeals.

Submitted April 8, 1974.

Decided July 19, 1974.

Jerrold Scoutt, Jr., Washington, D.C., appointed by this court, for appellant.

Earl J. Silbert, U. S. Atty., John A. Terry, James F. Flanagan and Michael G. Scheininger, Asst. U. S. Attys., for appellee.

Before KERN, NEBEKER and PAIR, Associate Judges.

PAIR, Associate Judge:

On this appeal from a conviction for second degree murder,[1] error is claimed in permitting the government to cross-examine appellant in respect to his prior criminal record and his reputation for carrying a gun. In addition, plain error is claimed in the court's instructions on

1. D.C.Code 1973, § 22-2403.

manslaughter and second degree murder. Because the court gave the standard jury instructions to which no objection was made at trial, we find no error affecting substantial rights and, accordingly, do not consider further this phase of the case. United States v. Carter, 157 U.S.App.D.C. 149, 482 F.2d 738 (1973).

At trial it was uncontroverted that appellant shot the decedent (Norman Tate) while both were waiting in line at the narcotics treatment center for methadone. Appellant had been standing near the end of the line and the decedent at or near the front. It appears that appellant asked the decedent if he (appellant) could go to the front of the line. Rebuffed by the decedent, appellant moved back toward the rear of the line. The decedent followed appellant cursing, uttering obscenities and gesturing vigorously as he proceeded. All witnesses agreed, however, that the decedent was not heard or observed to threaten appellant with physical violence. Appellant then drew, from the waistband of his trousers, a gun, lifted it from his side, extended his arm full length to within a foot of decedent's head, and fired a single shot which struck him between the eyes. Appellant then replaced the gun in the waistband of his trousers and walked out of the door of the center.

Claiming self-defense and provocation, appellant stated that he brought the gun to the narcotics treatment center for defensive purposes, explaining that he had been attacked by some men three weeks previously. Appellant insisted that at the time of the murder he was in fear that the decedent was about to attack him with a gun. On cross-examination the government sought, over appellant's objection, to explore his assertion that he had only recently begun carrying a gun. In that connection, the government proffered the testimony of a rebuttal witness to the effect that appellant had been carrying a gun prior to the alleged attack by the men.

Malice is, of course, an essential element of second degree murder and may be inferred from the use of a dangerous weapon such as a gun. *See* Belton v. United States, 127 U.S.App.D.C. 201, 382 F.2d 150 (1967). When, therefore, appellant chose to testify that he had been carrying a gun for at least three weeks prior to the murder, he opened the door to further inquiry on that particular subject. Such further inquiry was certainly relevant to the issue of malice and the court did not err in permitting it. *See and compare* United States v. Wilson, 178 F.Supp. 881, 885 (D.D.C.1959).

Appellant claims error also in the manner in which he was impeached by the government. The record discloses that on direct examination appellant testified that he had prior dealings with the murder victim at the District of Columbia Jail and at a halfway house. On cross-examination the prosecutor used this testimony as a context within which to impeach appellant:

Q. . . . You said you were at Lorton, is that correct?

A. I've been to Lorton and the jail.

Q. And, what were you at Lorton for?

MR. ROSEN: [defense counsel]: Objection to the form of the question.

BY MR. FLANAGAN [the prosecutor]:

Q. Were you serving time?

A. Yes, I was serving time.

Q. What for?

A. Larceny.

Q. Had you ever served time before?

MR. ROSEN: Objection to the form of the question.

THE WITNESS: Yes, sir; I've served time before.

MR. ROSEN: Just a second.

THE COURT: Excuse me. Your attorney has entered an objection and before I rule on that objection, I would want you not to answer.

Appellant argues that his last answer that he had "served time before" was impermissible evidence of prior "unspecified crimes." The fact is, however, that appellant's admission that he had "served time before" was merely repetitious of his own testimony on direct examination that he had been at Lorton more than once. If anything, appellant's general statement on cross-examination, which was interrupted by an objection and a bench conference and never thereafter pursued, was less prejudicial than the chronicle on direct examination of his confinements.

Nor was the manner of the impeachment "designed effectively to persuade the jury that appellant [had committed previously the same crime] for which he was now charged," as was the case in United States v. Carter, *supra*. In the case at bar the prosecutor's question specifically tracked appellant's own testimony and the admission of a prior larceny conviction is indisputably a crime involving "dishonesty or false statement" within the purview of D. C.Code 1973, § 14–305(b).

But whatever view may be taken of the impeachment process appellant did not request an immediate cautionary instruction and we hold that it was not plain error when the court failed to give, sua sponte, such an instruction. Dixon v. United States, D.C.App., 287 A.2d 89, cert. denied 407 U.S. 926, 92 S.Ct. 2474, 32 L. Ed.2d 813 (1972). The court did, however, give the jury at the conclusion of the trial a general limiting instruction on impeachment, thereby curing any possible error. The conclusion is thus compelled that the judgment of conviction must be, and is hereby,

Affirmed.

NEBEKER, Associate Judge (concurring):

I concur in the opinion and judgment of the court. In the hope of prompting further improvement in the so-called standard jury instructions,[1] the following observations are made.

In defining malice, as an element of second degree murder, the trial judge followed the substance of Instruction 4.21 of the standard jury instructions. The jury was told that, among its many affirmative characteristics, malice is a state of mind producing a wrongful act which is "without adequate provocation, justification or excuse", and that "[e]xpress malice exists where one unlawfully kills another in pursuant [*sic*, pursuance] of a wrongful act or wrongful purpose without legal excuse."

In defining manslaughter, the trial judge followed the substance of Instruction 4.25. The jury was told that the "Government must prove beyond a reasonable doubt . . . that the homicide was committed without legal justification or excuse."[2]

Appellant correctly contends that the difference between "adequate provocation, justification or excuse" and "legal justification or excuse" was not explained to the jury. He observes also that the two phrases are, as is usually the case in second degree murder cases, in juxtaposition—*i. e.*, a definition of the elements of the lesser offense follows after a definition of the elements of the greater. He concludes that "on the one hand the court said that malice was an element of second degree murder and not of manslaughter, but on the other hand defined [manslaughter] in such a way that malice seemed to be an element

---

1. Criminal Jury Instructions for the District of Columbia (2d ed. 1972).

2. Indeed, Jury Instruction 4.25 refers twice to the necessary finding of no legal justification or excuse.

of both offenses." [Brief for Appellant at 20.]

While it is true that jury instructions should be read in a realistic light without selecting and comparing separate phrases for literal content apart from context, it would seem that these phrases warrant reexamination as possible sources of confusion. For second degree murder, the necessary malice is in part defined as "a condition of mind which prompts a person to do wilfully, that is, on purpose, without adequate provocation, justification or excuse, a wrongful act whose foreseeable consequence is death or serious bodily injury to another." Express malice is then said to exist, ipso facto, when "one unlawfully kills another in pursuance of a wrongful act of unlawful purpose without legal excuse." On the other hand, manslaughter is defined, *inter alia*, as a homicide "committed without legal justification or excuse." The former definition in second degree murder describes the proof necessary to establish the so-called second element of manslaughter, and, as such, creates a definitional dilemma. It is possible that these definitions prompted the note from one of the jurors, which read:

> Can I ask for a portion of the Judge's instructions
>
> Re: 2d degree murder
>
>    Manslaughter
>
>    Self Defense

My purpose is not to supply an answer to this instructional difficulty but rather to prompt consideration and possible improvements. Perhaps it would be advisable to deemphasize the references to legal justification or excuse in both instructions. In second degree murder, the state of mind is the critical determination to be made respecting existence of malice. In manslaughter, the absence of legal justification or excuse, not being a question of malice, in reality goes to absolute legal defenses to this least of all general homicide offense. Thus it may be better simply to define

manslaughter as the unlawful killing of a human being without malice and then define unlawful killing as one to which the law recognizes no legal defense. The "justifiable" and "excusable" homicide defenses could then be described as "legal defenses" when it is appropriate to instruct on those defenses in the detail required.