Vance **JOHNSON**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 10025.

District of Columbia Court of Appeals.

Argued Sept. 15, 1976.

Decided Dec. 8, 1976.

David S. Fleischaker, Washington, D.C., appointed by the court, for appellant.

Robert P. Palmer, Asst. U. S. Atty., Washington, D.C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease and Gerard F. Treanor, Jr., Asst. U. S. Attys., Washington, D.C., were on the brief, for appellee. D. Michael Stroud, Asst. U. S. Atty., Washington, D.C., also entered an appearance for appellee.

Before KELLY, Associate Judge, REILLY, Chief Judge, Retired, and PAIR, Associate Judge, Retired.

KELLY, Associate Judge:

Appellant Johnson was convicted by a jury of various counts of assault with intent to commit robbery, assault with intent to commit robbery while armed, assault with a dangerous weapon, and one count of carrying a pistol without a license.[1] He was sentenced under the Federal Youth Corrections Act, 18 U.S.C. § 5010(b) (1970) on the weapons count, and § 5010(c) on the remaining counts.

The government presented testimony at trial that during the early morning hours of September 24, 1974, appellant was picked up by two men, Lee Otis Gibson, Jr. and Eric A. Foster, who were on leave from the Norfolk Naval Air Station, were lost, and were looking for the Skyline Inn which actually was only a few blocks away. It was agreed that appellant would direct them to the Inn if they would drive him to his home at 4th and G Streets, N.E. The servicemen testified that upon reaching that destination, appellant robbed them at gunpoint, firing a warning shot when they did not respond quickly enough. During Foster's attempt to seize appellant's gun, Gibson was shot in the neck, and Foster was shot three times in the groin, chest, and leg.

Appellant's testimony was that as he attempted to leave the car upon reaching his home, he was robbed by the two servicemen, who brandished a gun, and that Gibson and Foster were shot during the struggle over the weapon. He claimed he was "winged" in the hand but required no medical attention, and explained that he did not immediately go to the police because he knew they wouldn't believe him. Two witnesses who had responded to the sound of the gunshots saw only the end of the struggle and appellant's flight.

1. D.C.Code 1973, §§ 22–501; –501, –3202; –502; and –3204 respectively.

Assigned as error on appeal are the facts that at trial (1) the prosecutor elicited from appellant that the Army had discharged him for failure to disclose his juvenile arrest record; (2) the court failed to give a cautionary instruction sua sponte on the use of a record of prior arrests; and (3) the court curtailed to his detriment counsel's cross-examination of the complaining witnesses about their activities earlier in the evening before the shooting. It is contended that these errors were particularly damaging because the sole issue in the case was appellant's credibility.

I

Appellant came to trial wearing a National Guard uniform which he had recently been issued after he enlisted in the District of Columbia Guard Unit. He was not yet on duty and had no reason to be in uniform, but over objection he testified on cross-examination as follows:

Q  Isn't it a fact, sir, that the Army Regulations—National Guard Regulations prohibit you from wearing the uniform except when you're on duty?

A  Well, Mister, if it is, it is beyond my knowledge. All I know, I'm in the National Guard; they gave me the uniform, and I figured the only way to let the whole court know that I was in the National Guard was to wear it the first day in court.

Q  For what purpose?

A  Well, I'm not no bum, and that is my occupation.

\*    \*    \*    \*    \*    \*

Q  You wore the uniform to get the jury's sympathy, didn't you?

A  I didn't—

[DEFENSE COUNSEL]: Objection, Your—

THE WITNESS: —wear the uniform to—

[DEFENSE COUNSEL]: —Honor.

THE WITNESS: —get the jury's sympathy.

[DEFENSE COUNSEL]: Just a minute.

THE WITNESS: I wore the uniform because my suit wasn't out of the cleaners yet.

\*    \*    \*    \*    \*    \*

Q  The Army suit is in the cleaners today, is it?

A  No; the Army suit's at home, hung up.

Q  You been in the service before?

A  That's right.

Q  National Guard?

A  No; Regular Army.

Q  Regular Army?

A  Right.

Q  How long were you in the Regular Army?

A  I was in the Regular Army—

[DEFENSE COUNSEL]: Your Honor, I object to this. I think it's beyond the scope of cross-examination—of the line of questioning of the Government and I fail to see the relevancy.

[PLAINTIFF'S COUNSEL]: Your Honor, this witness has come in yesterday with the purposeful attempt to arouse the sympathy of the jury by representing himself as a member of the Army and we think it is proper cross-examination to just explore how good an Army man he is.

THE COURT: Objection is overruled.

BY PLAINTIFF'S COUNSEL:

Q  How long were you in the Army?

A  I was in the Army for a period of three months and eight days.

Q That was your enlistment, wasn't it?

A No, it wasn't my enlistment.

Q Well, how long was your enlistment?

A My enlistment was for three years.

Q And you lasted three months?

A I was discharged, honorably, from the United States Army due to the fact that I did not put down a previous juvenile record—

[DEFENSE COUNSEL]:
Objection—

THE WITNESS: —which that I didn't think that mattered, anyway, since when you're in the Army, you're supposed to be a man.

THE COURT: Objection is overruled.

[DEFENSE COUNSEL: Your Honor, may I have a five minute recess to talk to my client? I don't think he understands that, you know, when an objection is made in court that he is not required to answer until the Court rules on the objection.

\*   \*   \*   \*   \*   \*

Appellant contends that the prosecutor deliberately and improperly maneuvered him into admitting his juvenile record. *See Brown v. United States,* 119 U.S.App. D.C. 203, 338 F.2d 543 (1964), and D.C. Code 1973, § 14–305. He states that the error is aggravated by the fact that appellant's juvenile record consisted only of arrests which did not culminate in convictions. *See United States v. Lewis,* 157 U. S.App.D.C. 43, 482 F.2d 632 (1973). The prejudice arising from this disclosure, says appellant, far outweighs whatever value there was to revealing the existence of appellant's juvenile record in the context of clarifying appellant's military service rec-

ord. See *Cooper v. United States,* D.C. App., 353 A.2d 696, 703 (1975).

■ However, the appellant has failed to take sufficiently into account the fact that *he* chose to wear the National Guard uniform to communicate to the jury his status as a serviceman, thereby inviting cross-examination about the quality and duration of his military service and of the image he was attempting to convey. We do not, of course, condone any inquiry deliberately designed to lead the witness to blurt out matter inadmissible in evidence.[2] We conclude, however, that in this instance appellant precipitated discussion of his military record by wearing an Armed Services' uniform in court, and that he volunteered the reason for his Army discharge before the direct question was asked of him and before the judge had an opportunity to rule upon his counsel's objection.

■ As to appellant's next claim of error, it is of course true that failure to give an *immediate* cautionary instruction on the use of prior criminal acts for impeachment purposes is not error when such an instruction is included in final instruction to the jury. *Curry v. United States,* D.C.App., 322 A.2d 268, 270 (1974). Absent that fact, failure on the part of the court to give any cautionary instruction sua sponte to the jury regarding impeachment testimony disclosing prior criminal acts will end in reversal only upon a showing of harm from the error. *Dixon v. United States,* D.C.App., 287 A.2d 89, *cert. denied,* 407 U.S. 926, 92 S.Ct. 2474, 32 L.Ed.2d 813 (1972). We do not equate the testimony here, however, with an attempt to impeach appellant with prior arrests or convictions. The prosecutor's cross-examination was on a subject which had been injected into the case and was properly allowed. Appellant said only that he had been honorably discharged from the Army for failure to dis-

2.  *See Brown v. United States, supra,* 119 U.S.App.D.C. at 206, 338 F.2d at 546.

close a juvenile record. The details of that record were not made the subject of further inquiry or comment by counsel [3] or the court. For whatever reason, no instruction to disregard the testimony was ever requested by defense counsel. On this record, we are not persuaded that there was a substantial likelihood that the verdict of the jury was significantly affected by failure to give, sua sponte, any kind of cautionary instruction.

 As to the issue of restricting the cross-examination of the complaining witnesses about the details of their movements on the evening before the robbery, we find no abuse of discretion on the part of the trial judge in containing an examination which was directionless and repetitious. Reasonable latitude was afforded defense counsel in developing the setting of the criminal activity and the general background of the complaining witnesses. *Alford v. United States*, 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931); *see also Lindsey v. United States*, 77 U.S.App.D.C. 1, 133 F.2d 368 (1942).

*Affirmed.*

---

3. *Compare Brown v. United States, supra.*